# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BENJAMIN H. RUDD | § | |
| | § | |
| v. | § | CASE NO. 4:14-CV-104 |
| | § | (Judge Mazzant/Judge Nowak) |
| CAROLYN W. COLVIN, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECUIRTY ADMINISTRATION | § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On September 2, 2015, the report of the Magistrate Judge was entered containing proposed findings of facts and recommendations that the Administrative Law Judge be affirmed. Having received the report and recommendation of the Magistrate Judge (Dkt. #17), having considered each of Plaintiff's timely filed objections (Dkt. #18), and having conducted a de novo review of Plaintiff's claims and all relevant pleadings, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct; and the Court hereby adopts the Magistrate Judge's report (Dkt. #17) as the findings and conclusions of the Court.

### BACKGROUND

The facts in this case have been set forth in detail by the Magistrate Judge, and need not be duplicated in their entirety herein (*see* Dkt. #17). In summary, on May 16, 2011, Plaintiff filed concurrent applications for social security disability benefits and supplemental income benefits under Title II and Title XVI of the Social Security Act ("Act"), alleging an onset disability date of June 1, 2008 (TR 138-47), and the following impairments: epilepsy, seizures, and depression (TR 74, 163). Plaintiff's claims were initially denied by notice on August

4, 2011, and again denied upon reconsideration on November 8, 2011. *Id.* at 19. Plaintiff subsequently requested a hearing before an ALJ on December 27, 2011. *Id.* The ALJ conducted a hearing on October 23, 2012, and heard testimony from Plaintiff, two medical experts, and a vocational expert. *Id.* On November 29, 2012, the Administrative Law Judge ("ALJ") issued his decision denying benefits and found Plaintiff not disabled at step five of the sequential evaluation process. *Id.* at 25. On December 27, 2012, Plaintiff requested Appeals Council review of the ALJ's decision, and on December 17, 2013, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. *Id.* at 6, 14.

On February 18, 2014, Plaintiff filed his Complaint in this Court (Dkt. #1). On September 2, 2015, the Magistrate Judge issued a Report and Recommendation (Dkt. #17). On September 16, 2015, Plaintiff filed his Objections to Report and Recommendation of Magistrate Ruling (Dkt. #18). Plaintiff objects to each of the recommended findings of the Magistrate Judge. *See generally id.* The Court will address Plaintiff's objections in the following order: whether (i) the ALJ failed to properly consider medical listing 11.02; (ii) remand is warranted based on new evidence before the Appeals Council; (iii) the ALJ failed to properly weigh the medical evidence; (iv) the ALJ failed to properly evaluate Plaintiff's credibility; and (v) the ALJ relied on flawed vocational expert testimony.

## I. WHETHER THE ALJ FAILED TO PROPERLY CONSIDER MEDICAL LISTING 11.02A

Plaintiff objects to the Magistrate Judge's finding that the ALJ's determination – that Plaintiff's seizure frequency does not meet medical listing 11.02A – is supported by substantial evidence (Dkt. #17 at 2). Plaintiff makes a number of arguments in this regard. Specifically, he alleges that "[t]he Magistrate Judge's own analysis that *if* Medical Listing 11.02 were considered

2

by the ALJ in his decision, he *could* have found it was not met or equaled based on conflicting evidence is insufficient to affirm the Commissioner's final decision." *Id.* at 3 (citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Mercantile Texas Corp. v. Board of Governors of the Federal Reserve System*, 638 F.2d 1255, 1260 (5th Cir. 1981)) (emphasis in original). Plaintiff alleges that the Magistrate Judge erred because Dr. Murphy confirmed his seizures were at a frequency sufficient to meet medical listing 11.02A since February 2011, and that the ALJ falsely stated that Dr. Murphy testified that Plaintiff does not have a medically determinable impairment that meets the seizure frequency requirements of the listing. *Id.* Plaintiff further argues that the ALJ purportedly provided no analysis of medical listing 11.02A, failed to cite any evidence he relied on that called Dr. Murphy's testimony into question, and that Plaintiff's medical records indicate that he had seizures every ten (10) days even with medication compliance. *Id.* at 4-6.

1. *Frequency of Seizures*

As the Magistrate Judge noted, medical listing 11.02A requires that a claimant have grand mal seizures **that occur more frequently than once a month** despite at least three months of prescribed treatment.[1] 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added). For the purpose of the Court's review, therefore, only Plaintiff's grand mal seizure frequency is relevant here (because only grand mal seizures fall within medical listing 11.02A) (Dkt. #17 at 10).[2]

---

[1] Both parties agree that Plaintiff has been sober and in compliance with his prescribed treatment since at least August 2011 (Dkt. #17 at 10).

[2] Plaintiff cites to nine (9) instances in his Objections in support of the proposition that his medical records indicate that he has regular seizures that meet medical listing 11.02A requirements (Dkt. #18 at 3). However, after careful review of the medical records cited, not all of these seizures are grand mal seizures. For example, on February 4, 2011, Plaintiff was "evaluated for a probable seizure with a fall injury" (*Id.* at 4), but the medical records do not indicate if this was a grand mal seizure or a petit mal seizure. Likewise on both May 18, 2011, and August 24, 2011, the medical records indicate that Plaintiff's last "GTC" (or grand mal) seizure was in April 2011 (TR 1089, 1299). And on May 2, 2012, Plaintiff's medical records indicate that he "[u]sually has 1 seizure a

3

The Magistrate Judge determined, and this Court's review confirms, that the evidence presented to the ALJ regarding Plaintiff's grand mal seizure frequency was conflicting. *Id.* Specifically, Dr. Agostini's letter states that Plaintiff suffered from no more than one grand mal seizure per month and the impairment questionnaire from Dr. Van Ness states that Plaintiff suffers from "1-2" grand mal seizures per month. *Id.* at 11. At the hearing, Plaintiff himself testified that he experiences only one grand mal seizure every two months. *Id.* The Magistrate Judge noted that the only evidence presented to the ALJ that suggests Plaintiff could potentially meet the required seizure frequency of medical listing 11.02A is Dr. Van Ness' seizure impairment questionnaire, which also indicates that some months Plaintiff only experiences one grand mal seizure. *Id.* Based on the medical evidence and the entire administrative record, the Magistrate Judge found that the ALJ's determination that Plaintiff does not meet 11.02A is supported by substantial evidence that a reasonable mind might accept as adequate to support the conclusion that Plaintiff does not have grand mal seizures more than once every month. *Id.* at 12.

Plaintiff alleges that the Magistrate Judge conducted its own analysis and found that if the ALJ considered medical listing 11.02A, he could have found that Plaintiff did not meet the listing because of the conflicting evidence in the record (Dkt. #18 at 3). Plaintiff in making this assertion glosses past the Magistrate Judge's reference to the ALJ's express finding that "Dr. Murphy testified that the claimant does not have a medically determinable impairment that meets or medically equals the requirements of a listing" (TR at 23; *see also* Dkt. #17 at 13). At the hearing, medical listing 11.02A was discussed at length while Dr. Murphy was testifying and the ALJ referenced this testimony in his decision (TR 23). The Magistrate Judge did not conduct its

---

month" (TR 1829). It is imperative that the Court only take documented grand mal seizures into account in its analysis, as that is the only type of seizure medical listing 11.02A deals with (*see* Dkt. #17 at 3, 9-10). *See also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

own analysis; but rather, fully reviewed the record evidence and determined that substantial evidence supported the ALJ's decision. The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1527(c)(2). The ALJ, as fact finder, and not this Court, has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). When substantial evidence supports the ALJ's decision, that decision is not subject to reversal even though there may be substantial evidence in the record that would have also supported the opposite conclusion. *Dashti v. Astrue*, No. 4:11-cv-197, 2012 WL 1624150, at *6 (N.D. Tex. Apr. 9, 2012); *see also Dollins v. Astrue*, No. 4:08-cv-503, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009).

The administrative record as a whole illustrates that the ALJ's finding is supported by substantial evidence due to the inconsistencies regarding the frequency of Plaintiff's grand mal seizures. Fifth Circuit precedent clearly holds that the Court may not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for that of the Commissioner. *Williams v. Comm'r of Soc. Sec. Admin*., No. 4:11-CV-00373, 2013 WL 1282460, at *3 (E.D. Tex. Mar. 27, 2013) (citing *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1995)). A finding of no substantial evidence is appropriate only when no credible evidentiary choices or medical findings exist to support the decision. *Id.* (citing *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir.1988)). The medical evidence and Dr. Murphy's testimony do not clearly establish that Plaintiff has more than one grand mal seizure per month. Accordingly, Plaintiff's objection is overruled.

## 2. *Failure to Identify the Listing*

Plaintiff also objects, as he did in his original Brief (Dkt. #8 at 14-15), that the ALJ failed to identify medical listing 11.02A in his decision and failed to explain how he reached the conclusion that Plaintiff does not meet the listing (Dkt. # 18 at 5) (citing *Audler v. Astrue* for the proposition that remand is necessary if the ALJ fails to identify the listed impairment and provide an explanation as to how he reached the conclusion that the listing is not met). *See also Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007). The Magistrate Judge analyzed the ALJ's failure to identify medical listing 11.02A and the authority cited by Plaintiff (Dkt. #17 at 12-13). In the present case, while the ALJ failed to expressly mention medical listing 11.02A, he does cite the evidence he relied upon in making his determination that Plaintiff does not meet the listing (Dkt. #17 at 12-13).³ Thus, the Court agrees with the Magistrate Judge that the ALJ's determination was more than a bare conclusion and was supported by substantial evidence (Dkt. #17 at 13).⁴ Accordingly, Plaintiff's objection is overruled.

---

³ Specifically, the ALJ's decision on page twenty-three (23) of the record states that Dr. Murphy testified that Plaintiff does not have an impairment that meets or equals the requirements of the listing (Dkt. #17 at 13). Plaintiff also alleges that the ALJ "falsely stated that Dr. Murphy testified [Plaintiff] 'does not have a medically determinable impairment that meets or medically equals the requirements of a listing'" (Dkt. #18 at 4). While the ALJ did not directly quote Dr. Murphy's testimony, this statement is not blatantly false. Dr. Murphy testified that whether or not Plaintiff meets listing 11.02A depends, in large part, upon which evidence the ALJ relied and/or found to be more credible in making the frequency determination (TR at 59). For example, Dr. Murphy responded to a question from the ALJ regarding Plaintiff's seizure frequency stating, "[w]ell, Judge, it depends on which – I mean, the – [Dr. Van Ness] note[s] he would be at a listing level. By his testimony, [he] would not." *Id.*

⁴ Furthermore, the Fifth Circuit has held that procedural perfection in administrative proceedings is not required and any variation amounts to harmless error that is not grounds for dismissal. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Audler*, 501 F.3d at 448. In *Willingham v. Commissioner*, this Court held the ALJ's failure to recite a medical listing constituted harmless error because the plaintiff could not prove that he actually met the listing and the ALJ's reasons were not bare conclusions which prevent meaningful review. No. 4:12-cv-242, 2014 WL 1050286, at *5 (E.D. Tex. Mar. 14, 2014); *see also Wilson v. Commissioner*, No. 9:13-cv-64, 2014 WL 5343200, at *5 (E.D. Tex. Sept. 29, 2014). Plaintiff's rights have not been affected here. Plaintiff did not prove that he actually met medical listing 11.02A, making the ALJ's failure to identify the medical listing at issue harmless error.

## II. WHETHER NEW AND MATERIAL EVIDENCE PRESENTED TO THE APPEALS COUNCIL SHOULD BE CONSIDERED

Plaintiff further objects to the Magistrate Judge's finding that new evidence submitted to the Appeals Council does not warrant remand (Dkt.# 18 at 10). Plaintiff alleges that the new evidence – Dr. Chen's medical opinion – contradicts the ALJ's findings regarding whether Plaintiff meets the medical listing, the ALJ's residual functional capacity determination, and confirms the earlier opinions from Dr. Van Ness and Dr. Murphy, as well as the underlying medical records documenting the severity of Plaintiff's seizures. *Id.* at 11. As a result, Plaintiff alleges, the ALJ's residual functional capacity determination is not based on any specific evidence in the record and is not supported by the entire record, including the new and material evidence. *Id.*

Plaintiff is correct. Dr. Chen's medical opinions are new; however, Plaintiff fails to satisfy the materiality requirement necessary for remand. The materiality of new evidence involves a two-step analysis: (1) whether the evidence relates to the time period for which disability benefits were denied, and (2) whether there is a reasonable probability that the new evidence would change the outcome of the case.[5] *Nehlig v. Commissioner*, 40 F. Supp. 2d 841, 849 (E.D. Tex. 1999) (citing *Bradley v. Bown*, 809 F.2d 1054 (5th Cir. 1987)).

The Magistrate Judge properly conducted the two-step materiality analysis. At the first step the Magistrate Judge noted there is no dispute amongst the parties that the new evidence presented by Plaintiff relates to the time period for which disability benefits are sought (Dkt. #17 at 14; TR 2125-29). The Magistrate Judge thus focused on the second step and whether the newly submitted evidence materially changes the outcome of the case (Dkt. #17 at 14). The new

---

[5] Moreover, the Court notes that evidence submitted to the Appeals Council does not always or per se require remand when the Appeals Council fails to address the evidence in its decision. *See e.g., Ellis v. Commissioner*, No. 4:12-cv-455, 2014 WL 1234213, at *5 (E.D. Tex. Mar. 25, 2014) (citing *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009)).

7

evidence from Dr. Chen – Plaintiff's new treating neurologist – includes a new consultation form (TR at 1922-25) and a seizure impairment questionnaire (TR at 2125-30). The new consultation form indicates that Plaintiff has a history of seizures with a frequency of grand mal seizures ranging from "1-2 times a month" and includes a recommendation that Plaintiff not drive and avoid dangerous environments, such as heights. *Id.* at 1922, 1924. The seizure impairment questionnaire does not specify the frequency of grand mal seizures, rather it states "highly unpredictable" in response to the seizure frequency question. *Id.* at 2126. The questionnaire dated for April 22, 2013 (after the ALJ hearing), also states that Plaintiff had only two grand mal seizures in the first quarter of 2013, one in January of 2013, and one in April of 2013. *Id.*

As discussed at length above, in order to meet medical listing 11.02A Plaintiff must have grand mal seizures **that occur more than once a month** despite three consecutive months of treatment. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added). There is not a reasonable probability that Dr. Chen's questionnaire listing only two seizures in the first four months of 2013 and/or the seizure frequency description of "highly unpredictable" would change the outcome of the case; this new evidence does not refute the ALJ's findings. *Bradley*, 809 F.2d at 1058 (holding that remand is not justified if there is no reasonable probability that the new evidence would have changed the outcome of the disability determination); *see also Lee v. Astrue*, No. 3:10-cv-115, 2010 WL 3001904 (N.D. Tex. July 31, 2010) (citing *Higginbotham v. Barnhart*, 163 F. App'x. 279, 281-82 (5th Cir. 2006) (remand is only proper if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported). Accordingly, Plaintiff's objection is overruled.

## III. WHETHER THE ALJ FAILED TO PROPERLY WEIGH THE MEDICAL EVIDENCE

Plaintiff next objects to the Magistrate Judge's finding that Plaintiff's substantial rights were not affected by the ALJ's error, if any, in not including in Plaintiff's residual functional capacity: (1) that his symptoms interfere with his attention and concentration; (2) that anxiety, stress, and/or heat are precipitating factors that may cause a seizure; and, (3) that his post-seizure symptoms include confusion and a need for sleep (Dkt. #18 at 6).[6] Plaintiff states that the Magistrate Judge "contends that any error in omitting the additional limitations . . . would not have changed the outcome, but [it] cites to no evidence that meets the Commissioner's burden of proof at step five that if [Plaintiff's] symptoms frequently interfered with attention and concentration and that he must avoid stress and heat, there would be jobs available for Plaintiff.[7] *Id.* at 7. Therefore, Plaintiff alleges, it cannot properly be determined that any error was harmless. *Id.*

The Magistrate Judge found that Plaintiff's substantial rights were not affected by the ALJ's exclusion of the limitations cited in Dr. Van Ness' seizure impairment questionnaire from Plaintiff's residual functional capacity determination (Dkt. #17 at 17). The three omitted limitations analyzed by the Magistrate Judge include: "anxiety/stress, heat" which are listed as precipitating factors that may cause a seizure, that Plaintiff's symptoms are severe enough to "frequently" interfere with attention and concentration, and Plaintiff's tolerance for work stress is defined as "capable of low stress" (TR at 1796-98). The Magistrate Judge cited Fifth Circuit

---

[6] Plaintiff does not appear to argue that the ALJ ignored the treating physician's opinion in its entirety, only that these specific "limitations" were not included in the residual functional capacity determination (see Dkt. #18 at 6). For clarity, the ALJ did not ignore Dr. Van Ness' opinions in its entirety, indeed he specifically cites Dr. Van Ness' suggestion that Plaintiff "avoid heights, extremes of temperature, humidity, dangerous machinery and driving" (TR 22, 25) and references the seizure impairment questionnaire as a whole (TR 22).

[7] Plaintiff is inconsistent with regard to the argument of post-seizure symptoms being included in the residual functional capacity determination (*see* Dkt. 18 at 6; *but see* Dkt. 18 at 7). The Court will nevertheless address this limitation as well.

9

precedent that if the ultimate disability determination remains unchanged, even if some of the reasoning underlying that decision is erroneous, no substantial rights have been affected. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (holding that claimant's substantial rights were not affected when the magistrate agreed with only one of the three determinations by the ALJ because the resulted was the same – claimant was not disabled); *see also Ferris v. Massanari*, 253 F.3d 700 (5th Cir. 2001) (citing *Mays*, 837 F.2d at 1364) ("[E]ven if the ALJ erred in rejecting [claimant's] complaints regarding his hand, a question which we do not answer, any such error was harmless. The jobs cited by the ALJ do not require significant use of the dominant hand beyond occasional writing. Any error did not affect Ferris's substantial rights."). The Magistrate Judge found that even if those omitted limitations were included in Plaintiff's residual functional capacity, Plaintiff could still perform the jobs the vocational expert testified were available to Plaintiff because all three of these jobs are unskilled with a vocational preparation level of two (Dkt. #17 at 17).

The Court will address each omitted limitation in turn. The three occupations the vocational expert testified were available to Plaintiff based on the medical background derived from the opinions of the two medical experts at the hearing are: mail clerk, photocopy-machine operator, and charge-account clerk; all of which are unskilled with a preparation level of two (TR 64-65). Unskilled means that the worker needs little or no judgment to do simple duties that can be learned on the job in a short period of time. *See* 20 C.F.R. §§ 404.1568(a), 416.968(a). Preparation level two is defined as a job that requires a learning period of anything beyond a short demonstration up to and including one month. *See Dictionary of Occupational Titles*, Appx. C – Components of the Definition Trailer, (4th ed. 1991). The omitted limitation of heat as a possible precipitating factor that may cause a seizure is irrelevant because all three jobs cited

by the ALJ list heat as a condition that is not present in the work environment. *See* MAIL CLERK, DICOT 209.687-026 ("Extreme Heat: Not present – Activity or condition does not exist"); *see also* PHOTOCOPYING-MACHINE OPERATOR, DICOT 207.685-014 ("Extreme Heat: Not present – Activity or condition does not exist"); *see also* CHARGE-ACCOUNT CLERK, DICOT 205.367-014 ("Extreme Heat: Not present – Activity or condition does not exist").

The omitted limitations of "stress/anxiety" as a precipitating factor and the limitations regarding Plaintiff's seizure symptoms are also irrelevant. An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Smith v. Comm'r of Soc. Sec. Admin.*, No. 4:12-cv-625, 2014 WL 4467880, at *3 (E.D. Tex. Sept. 9, 2014) (citing *Qualls v. Astrue,* 339 F. App'x. 461, 466 (5th Cir. 2009)). While it is true that the opinions of the treating physician are generally entitled to great weight, reliance on those opinions can be decreased and even rejected by the ALJ for good cause. *Id.* (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). The ALJ may also disregard statements made by treating physicians which are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Id.* (citing *Greenspan*, 38 F.3d at 236). "When a treating or examining physician's opinions are inconsistent with other substantial evidence in the record, the opinions are not entitled to any specific weight in the ALJ's decision." *Id.* (citing *DeLeon v. Barnhart,* 174 Fed. Appx. 201, 202 (5th Cir. 2006)).

The reaction to the demands of work (stress) is highly individualized. However, the ALJ here considered Dr. Van Ness' seizure impairment questionnaire which specifically states that Plaintiff is in fact "capable of low stress" (TR 1798). Furthermore, the ALJ implicitly found that even if Plaintiff has symptoms that "frequently" interfere with his attention and concentration or

post-seizure symptoms of confusion and sleepiness, they do not rise to the level of a limitation that is required to be included in Plaintiff's residual functional capacity determination (*see* TR 22, 25). Since the ALJ had already made the determination that Plaintiff's seizure frequency does not rise to the level required by the listing, it is also reasonable to conclude that Plaintiff's symptoms surrounding these seizures do not rise to the level of a limitation that should be included in Plaintiff's residual functional capacity, or are limitations that would interfere with the three occupations cited by the ALJ. And, again the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Smith*, 2014 WL 4467880, at *3 (citing *Qualls,* 339 F. App'x. at 466). The ALJ's error, if any, in not including these limitations amounts to harmless error. Accordingly, Plaintiff's objection is overruled.

## IV. WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY

Plaintiff next objects to the Magistrate Judge's finding that the ALJ's credibility determination was supported by substantial evidence (Dkt. #18 at 7). Plaintiff claims that the ALJ provided no rationale in evaluating Plaintiff's credibility and that the Magistrate Judge provided post hoc rationalizations for the ALJ's credibility determination. *Id.* Specifically, Plaintiff argues that he gave detailed testimony regarding his symptoms, limitations, and lack of response to treatment, and that the ALJ did not compare this testimony against the underlying record, as required by the Social Security Regulations. *Id.* at 8.

The Magistrate Judge correctly stated, in evaluating the claimant's subjective evidence and credibility, the ALJ is required to follow a two-step process. *See Salgado v. Astrue,* 271 F. App'x 456, 458 (5th Cir. 2008); *see also Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996). First, the ALJ must determine whether there is an impairment that reasonably produces

the symptoms of which the claimant complains ("Step 1"). *Salgado,* 271 F. App'x at 458; *see also Stevenson v. Colvin*, No. 1:11-cv-168, 2013 WL 1181456, at *3-4 (E.D. Tex. Mar. 20, 2013). If the ALJ finds no impairment, the claimant is not disabled. *Salgado,* 271 F. App'x at 458. If the ALJ identifies an impairment, the ALJ then considers the claimant's statements regarding their symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the claimant's ability to do basic work ("Step 2").[8] *Stevenson*, 2013 WL 1181456, at *3. Furthermore, the ALJ must consider the claimant's subjective complaints and allegations regarding their capacity to do work, but may find that those complaints are not credible or are exaggerated in light of the medical evidence. *See Wilson*, 2014 WL 5343200, at *7.

Here, the ALJ determined at Step 1 that Plaintiff has medically determinable impairments, which could reasonably be expected to cause the alleged symptoms (TR 25). However, at Step 2 the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* The Magistrate Judge found that the ALJ's credibility determination was not merely conclusory, but was supported by the record before the ALJ (Dkt. #17 at 19). Specifically, the Magistrate Judge noted the ALJ's reference to Plaintiff's past non-compliance with treatment medications and the inconsistencies in the record regarding the frequency of Plaintiff's grand mal seizures (Dkt. #17 at 19; TR 25).

---

[8] Social Security Administration Regulation 20 C.F.R. § 404.1529(c)(3) provides a non-exhaustive list of seven factors to be considered in making the second determination regarding claimant's credibility. *Ashford v. Commissioner*, No. 6:11-cv-155, 2013 WL 598902 (E. D .Tex. March 4, 2013). The factors relevant to this credibility determination are as follows: (1) claimant's daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms; (5) treatment, other than medication, undertaken to relieve pain or other symptoms; (6) any other measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

The ALJ also mentioned Dr. Murphy's testimony corroborating the inconsistencies in the record before making his credibility determination. *Id.* Plaintiff's contention that the Magistrate Judge made post hoc rationalizations for the credibility determination is unfounded (Dkt. #18 at 7). The Magistrate Judge cited specific instances where the ALJ supported his credibility determination with substantial evidence that a reasonable mind might accept as adequate to support the conclusion that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms are not credible (*see* Dkt. #17 at 19).

Plaintiff also contends that the ALJ applied the wrong legal standard by finding Plaintiff's testimony not credible to the extent it was inconsistent with the residual functional capacity finding (Dkt. #18 at 8). Plaintiff cites 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) and Seventh Circuit authority for the proposition that the ALJ improperly used "boilerplate language" in the credibility determination. *Id.* Plaintiff mischaracterizes the ALJ's credibility determination. The ALJ did not apply the wrong legal standard by finding that Plaintiff's testimony was not credible to the extent it was inconsistent with the residual functional capacity finding. Rather, the ALJ considered Plaintiff's statements, Dr. Murphy's testimony regarding seizure frequency and treatment compliance, the inconsistencies in the evidence, and the extent to which there were any conflicts between Plaintiff's statements and the medical evidence, just as the regulations require him to do (TR 24-25).[9]

---

[9] Both 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) deal with how the Social Security Administration evaluates symptoms, including pain. Specifically, "[i]n determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities . . . [w]e will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

Plaintiff's request that the Court consider the Seventh Circuit's approach, which strikes the ALJ's opinion if it contains "template" language in the credibility determination, has been rejected by this Court in favor of applying Fifth Circuit precedent. *Kiefer v. Comm'r of Social Security Admin*, No. 3:13-cv-330, 2014 WL 2700000, at *4, n. 2 (E.D. Tex. June 13, 2014). The Fifth Circuit affords the ALJ greater deference than other circuits in making his credibility assessment.[10] *Id.* (citing *Prince v. Barnhart*, 418 F.Supp.2d 863, 870-71 (E.D. Tex. 2005); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)).

While the ALJ did not explicitly discuss the seven factors provided by the Social Security Regulations in making his credibility determination, he did cite to 20 CFR. §§ 404.1529, 416.929 and SSRs 96-4p, 96-7p (TR 24). The ALJ also referenced both Plaintiff's testimony regarding his pain, symptoms, and seizure frequency, as well as, Dr. Murphy's testimony. *Id.* at 24-25. Accordingly, the ALJ's credibility determination is supported by substantial evidence, the ALJ's use of "template" language in the credibility determination, if any, is not reversible error, and Plaintiff's objection is overruled.

## V. WHETHER THE ALJ RELIED ON FLAWED VOCATIONAL EXPERT TESTIMONY

Plaintiff next objects to the Magistrate Judge's finding that the hypothetical question the ALJ posed to the vocational expert was not reversible error (Dkt. #18 at 9). Specifically, Plaintiff contends that the Magistrate Judge's "analysis does not accurately characterize the ALJ's [residual functional capacity] finding or the hypotheticals presented to the [vocational expert]." *Id.* Plaintiff asserts that since the vocational expert was never presented with a

---

[10] In *Falco*, the Fifth Circuit upheld an ALJ's rejection of subjective pain based on the residual functional capacity determination without stating any of the seven credibility factors. *Falco*, 27 F.3d at 163. Furthermore, "this Court has also upheld 'sloppy' ALJ decisions that do not explicitly name any [of the seven] factors, but contain some statements regarding pain and claimants activities. *Kiefer*, 2014 WL 2700000, at *4 (citing *Lewis v. Barnhart*, 431 F. Supp. 2d 657, 664 (E.D. Tex. 2006); *White v. Barnhart*, 454 F. Supp. 2d 609, 614 (E.D. Tex. 2006) (upholding an ALJ's rejection of pain when he made no specific findings, but cited 96-7p, which acknowledged the ALJ's familiarity with those standards and his duty to apply them)).

hypothetical based on the ALJ's residual functional capacity determination, the Commissioner cannot meet her burden of proof at step five of the disability analysis that jobs exist for an individual with these limitations. *Id.* at 10. Plaintiff also claims that deference should be given to the vocational expert's testimony that if an individual had a seizure on a monthly basis, such occurrences would not be tolerated by an employer. *Id.*

The Fifth Circuit has held that any error regarding the hypothetical question will not be reversible if the hypothetical question posed to the vocational expert by the ALJ reasonably incorporates all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions. *Bowling,* 36 F.3d. at 436. At Plaintiff's hearing, the ALJ asked the vocational expert a hypothetical question that incorporated both of the medical experts' testimonies, as related to a man the same age, with the same work history, and educational background as Plaintiff (TR 64). The ALJ then asked the vocational expert if such a person would be able to do either of Plaintiff's past relevant jobs, to which the vocational expert answered in the negative. *Id.* at 64-65. However, the vocational expert then testified that the hypothetical person would be able to perform other work in the national economy, such as a mail clerk, photocopy-machine operator, or charge-account clerk. *Id.* at 65. Plaintiff's attorney then had the opportunity to question the vocational expert about this hypothetical, asking the vocational expert if "even one seizure in the work place would cause [an] interruption…" *Id.* To which the vocational expert answered "yes." *Id.* Plaintiff's attorney then asked if such an interruption would be tolerated by an employer, and the vocational expert answered "[n]ot if it's one day a month, no." *Id.* at 66.

The ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing ropes, ladders or scaffolds, and Plaintiff should avoid hazards and take seizure precautions by avoiding unprotected heights, open flames, and moving and open machinery. *Id.* at 24. The ALJ further concluded that Plaintiff did not retain the ability to perform any past relevant work. *Id.* at 25. Notwithstanding, based on the vocational expert testimony and Plaintiff's residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff could successfully perform. *Id.* Therefore, the ALJ found Plaintiff not disabled at step five of the sequential analysis under sections § 216(i) and § 223(d) of the Act. *Id.* at 26.

The Magistrate Judge found that the hypothetical posed to the vocational expert in this case reasonably incorporated Plaintiff's disabilities and Plaintiff's representative had the opportunity to correct any deficiencies in the hypothetical question (Dkt. #17 at 21). Plaintiff's contention that the Magistrate Judge erred in its analysis because the ALJ's residual functional capacity finding was more restrictive than the hypothetical, not less restrictive, need not be addressed by the Court.[11] For the reasons discussed below, the hypothetical question reasonably incorporates all of Plaintiff's disabilities recognized by the ALJ.

The ALJ's hypothetical question incorporated both medical experts' prior testimonies, as well as a man the same age, with the same work history, and educational background as Plaintiff

---

[11] The Magistrate Judge interpreted Plaintiff's argument related to the hypothetical (Dkt. #8 at 21) as an allegation that the hypothetical question was flawed because it incorporated the additional limitation that Plaintiff cannot perform any complex tasks even though the ALJ's decision found that Plaintiff was limited only to not climbing ropes, ladders, or scaffolds, that he should avoid hazards and take seizure precautions, and avoid unprotected heights, open flames, and moving and open machinery. Based on Fifth Circuit precedent, the Magistrate Judge found that any additional limitations in the hypothetical question were not grounds for reversal (Dkt. #17 at 21). *See Lafleur v. Colvin*, 540 F. App'x 263, 266 (5th Cir. 2013) (upholding a hypothetical question that incorporate additional limitations, rather than those ultimately found by the ALJ in his final opinion). Plaintiff's argument in his objections appears slightly different; notwithstanding, whether the hypothetical question is more or less restrictive does not change the Court's analysis.

(TR 64).[12] Dr. Murphy's prior testimony at the hearing explained that Plaintiff either meets medical listing 11.02A based on his seizure frequency, or, if he does not meet the listing, his only limitation is seizure precautions. *Id.* at 58, 61. Thus, the vocational expert considered the fact that Plaintiff has seizures and requires seizure precautions when she made her occupational recommendations. *See Trevino v. Astrue*, No. 2:07-cv-0177, 2010 WL 3766815, at *5 (N.D. Tex. Sept. 9, 2010) report and recommendation adopted, No. 2:07-cv-0177, 2010 WL 3766812 (N.D. Tex. Sept. 27, 2010) ("When the ALJ presented the vocational expert with the hypothetical, however, he told the expert to take into account the typical seizure precautions in the workplace, . . . [t]he vocational expert had therefore already considered the fact that plaintiff has seizures when he made his recommendations.") (internal citations omitted). The ALJ's residual functional capacity determination is an enumerated list of seizure precautions. The hypothetical question posed by the ALJ, therefore, included all of the ALJ's residual functional capacity limitations because the ALJ incorporated Dr. Murphy's seizure precautions testimony into the question. Accordingly, the hypothetical question reasonably incorporated Plaintiff's disabilities as recognized by the ALJ, and Plaintiff's objection to the Magistrate Judge's finding is overruled.

Plaintiff also claims that deference should be given to the vocational expert's testimony that if an individual had a seizure on a monthly basis, such occurrences would not be tolerated by an employer (Dkt. #18 at 10). The Magistrate Judge explained that the ALJ is free to rely on

---

[12] Plaintiff's Objections fail to include the exact hypothetical the ALJ posed to the vocational expert (Dkt. #18 at 9). The exact language of the hypothetical question posed to the vocational expert at Plaintiff's hearing is as follows:
> [ALJ:] Okay. I'm going to give you a hypothetical. A man the same age, same work and educational background. I'm going to include the analysis of both of our medical experts. You heard Dr. Murphy's testimony with reartd to the objective physical and medical evidence in the file. And he said according to the medical evidence in the file, the claimant would meet 11.02A for his epilepsy. However, his testimony refuted that. And Dr. Smith testified in regard to the mood disturbance of the claimant, and it was his conclusion that the only limitation was that such a person should not do any complex type of tasks (TR 64).

portions of a vocational expert's testimony without endorsing all of the vocational expert's conclusions. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). An ALJ may also reject hypothetical testimony that is unsupported by the evidence. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985) (explaining that rejection of expert testimony was reasonable when it is found to be unsupported by the medical evidence). The Magistrate Judge, therefore, upheld the hypothetical question the ALJ posed to the vocational expert, the ALJ's disregard of such portions of testimony not supported by the evidence, and the ALJ's finding that a significant number of jobs exist in the national economy that can be performed by Plaintiff. Plaintiff has not provided any argument to refute the Magistrate Judge's findings on this point. Accordingly, Plaintiff's objection to the Magistrate Judge's finding is overruled.

## CONCLUSION

Having received the report of the Magistrate Judge, having considered each of Plaintiff's timely filed objections (Dkt. #18), and having conducted a de novo review of Plaintiff's claims and all relevant pleadings, this Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #17) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** that the decision of the Administrative Law Judge is AFFIRMED.

**SIGNED this 28th day of September, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE